FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2018 MAY -2 A 11: 50
CLERK'S OFFICE
AT GREENBELT
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

HESMAN TALL,
DOREEN SHING,

    Plaintiffs,

v.                              Case No.: GJH-17-2120

MARYLAND DEPARTMENT OF
HEALTH AND MENTAL HYGIENE,

    Defendant.

## MEMORANDUM OPINION

In this case, *pro se* Plaintiffs Hesman Tall and Doreen Shing challenge a determination made by Defendant Maryland Department of Health and Mental Hygiene regarding Plaintiffs' status in the Medicaid Home and Community-Based Services ("HCBS") waiver program. Plaintiff Doreen Shing was born with cerebral palsy, requires constant caregiver support, and receives funding through the HCBS program to pay for a caregiver. ECF No. 7 at 5.[1] Plaintiff Hesman Tall was hired by Shing as a "Self-Directed Personal Assistant, Job Coach and Supportive Staff Caregiver" on June 25, 2015. *Id.* at 6. In 2016, Defendant informed Shing that Tall had a criminal record which was not disclosed in his required background check, and ultimately informed Shing that Defendant would not provide any further funding for Shing to employ Tall. ECF No. 7-2; ECF No. 7-3. On July 27, 2017, Plaintiffs filed their Complaint in this case, seeking injunctive relief requiring Defendant to continue providing Shing with funding to pay Tall. ECF No. 1. A number of motions are currently pending on the docket, including

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Defendant's Motion to Dismiss, ECF No. 30, which argues that the Court does not have proper subject-matter jurisdiction over the case. Plaintiffs have filed a Motion to Deny Defendant's Motion to Dismiss, ECF No. 33 (amended at ECF No. 42), as well as a Motion to Strike Defendant's Motion to Dismiss, ECF No. 39. Defendant has responded to both Motions. ECF No. 36; ECF No. 44. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendant's Motion to Dismiss is granted.

I.  BACKGROUND[2]

   A. **Legal Background**

Before discussing the facts of this specific case, it is necessary to summarize the relevant federal and state law and regulations that Plaintiffs reference in their original and supplemented Complaint. "Medicaid is an optional, federal-state program through which the federal government provides financial assistance to states for the medical care of needy individuals." *Doe v. Kidd*, 501 F.3d 348, 351 (4th Cir. 2007). "Once a state elects to participate in the program, it must comply with all federal Medicaid laws and regulations." *Id.* States can opt in to a number of different Medicaid programs. Under Medicaid, state expenses for nonresidential community-based services are not automatically part of the cost sharing arrangement. *Pennsylvania Prot. & Advocacy, Inc. v. Houston*, 136 F. Supp. 2d 353, 358 (E.D. Pa. 2001). Section 1915(c) of the Social Security Act, however, provides a waiver for states to pay for "the cost of home or community-based services" for individuals where "there has been a determination that but for the provision of such services the individuals would require the level of care provided in a hospital or a nursing facility." 42 U.S.C. § 1396n(c). Section 1915(j) provides the further option to pay for "self-directed personal assistance services . . . under which

---

[2] Unless otherwise stated, the background facts are taken from Plaintiffs' original and amended Complaints or the documents attached to those Complaints, ECF No. 1, ECF No. 5, ECF No. 7, and are presumed to be true.

2

individuals, within an approved self-directed services plan and budget, purchase personal assistance and related services, and permits participants to hire, fire, supervise, and manage the individuals providing such services." 42 U.S.C. § 1396n(j)(4)(A). "The Developmental Disabilities Assistance and Bill of Rights Act of 2000 . . . offers States federal money to improve community services, such as medical care and job training, for individuals with developmental disabilities." *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 249 (2011).

### B. Factual Background

Plaintiff Doreen Shing was born with cerebral palsy and has a repetitive seizure disorder; as a result, she cannot use her left hand and requires a brace to walk. ECF No. 7 at 5. She requires constant monitoring and care to prevent injuries from seizures, fainting, and falling down. *Id.* Shing is a participant in Medicaid's Program for Disabled Citizens, and in 2012 she opted into the Home and Community Based Services ("HCBS") program. *Id.* at 6. In 2015, she opted into the Self-Directed Personal Assistant Services Program. *Id.* at 5–6.

Shing and her family have known Plaintiff Hesman Tall since 2009. *Id.* at 6. Shing hired Tall as "a Self-Directed Personal Assistant, Job Coach and Supportive Staff Caregiver" on June 25, 2015, and his employment began on July 1, 2015. *Id.* In May 2016, Defendant wrote a letter to Shing, informing her that Tall's legal name was previously "Brotha Workitout," that under that name he had pleaded guilty to one misdemeanor count of Fraud and Related Activity in Connection with Identification Documents under 18 U.S.C. § 1028(a)(2) & (6), and that he had failed to disclose these facts on his mandatory background check. ECF No. 7-2. Tall had informed Shing about his former name and misdemeanor plea in 2009, and Shing wrote to Defendant and stated that she wished to keep Tall as her caregiver. ECF No. 7 at 6. In August 2016, Defendant wrote back to Shing and informed her that Defendant would no longer provide

3

Shing with funds to pay Tall; Defendant advised Shing that she should "use [her] emergency staff to provide continuing service until a substitute employee is hired. . . . You or your authorized representative may ask for a Medicaid Fair Hearing about DDA's determinations." ECF No. 30-5 at 2.[3]

Plaintiffs broadly reference a decision by an Administrative Law Judge ("ALJ") in their Complaint and complain of conduct by the ALJ. *E.g.*, ECF No. 7 at 13. Defendant provides additional documentation, indicating that Plaintiffs submitted a request for an expedited Medicaid fair hearing to contest Defendant's decision. ECF No. 30-6 at 1. Defendant determined that Plaintiffs were not entitled to an expedited hearing, as Defendant was not "reducing [your] Medicaid benefits or services." ECF No. 30-7 at 1. On September 14, 2016, an ALJ agreed with Defendant and denied Plaintiffs' request for an expedited hearing. *Id.* at 2. The ALJ denied another request for an expedited hearing on October 26, 2016, and scheduled Plaintiffs' hearing for November 29, 2016. ECF No. 30-8 at 2. On February 10, 2017, another ALJ issued a determination regarding Plaintiffs' case. ECF No. 30-9. The ALJ granted a summary decision in favor of Defendant, finding that it was undisputed that Tall had been convicted of a crime of moral turpitude more recently than ten years before the date of his provider application; thus, Shing was not entitled to a waiver of the criminal background provision of the Waiver program. *Id.* at 6. Plaintiffs were informed that they could seek an administrative review within thirty days, or seek judicial review with a Maryland circuit court within thirty days of the date of decision. *Id.* at 7–8.

Five months later, on July 27, 2017, Plaintiffs filed their Complaint with this Court, seeking injunctive relief against Defendant. ECF No. 1. Both Tall and Shing signed this initial Complaint. The Court instructed Plaintiffs to supplement their Complaint, which Plaintiffs did on

---

[3] Plaintiffs attached an incomplete copy of this document to their amended Complaint. *See* ECF No. 7-3.

October 12, 2017. ECF No. 5; ECF No. 7. A Supplement and Amendment to Motion for Injunctive Relief, was signed only by Tall, ECF No. 5, and a separate Supplement and Amended Motion for Injunctive Relief, was signed only by Shing, ECF No. 7.[4] Plaintiffs allege that Defendant failed to follow a number of federal regulations, ECF No. 7 at 3, 7–11, and seek an injunction under these regulations as well as 42 U.S.C. § 1983, 42 U.S.C. § 1396(a)(8), and Title VII of the Civil Rights Act of 1964.[5] Specifically, Plaintiffs complain that: Defendant waited three months to notify Plaintiffs of their decision not to provide funding for Tall, *id.* at 8 (citing 42 C.F.R. § 431.230(a)(2)); Defendant violated Shing's right to have final decision-making authority regarding her caregiver, *id.* at 9 (citing 42 C.F.R. § 441.450); and, Defendant failed to engage in "Risk Management discussions" and "negotiations" with Shing, ECF No. 5 at 8 (citing 42 C.F.R. § 441.476). Plaintiffs claim that this Court has subject-matter jurisdiction because the case "involves questions of exceptional importance under the Developmental Disabilities Assistance and Bill of Rights Act . . . and 42 U.S. Code § 1983." *Id.* at 11. Since filing their original and supplemental Complaints, Plaintiffs have filed a number of motions for injunctive relief, a preliminary injunction, and a jury trial. *See* ECF Nos. 16, 19, 20, 34, 40, 41, 47, 51.[6]

On February 28, 2018, Defendant filed a Motion to Dismiss, arguing that this Court does not have subject-matter jurisdiction over the controversy, and that "Plaintiffs' due process

---

[4] As Plaintiffs are not lawyers, they cannot make legal arguments for each other. Thus, the Court considers ECF No. 5 to apply only to Tall, while ECF No. 7 applies only to Shing.

[5] Plaintiffs rely on federal regulations 42 C.F.R. §§ 431.230 (providing that if the beneficiary requests a hearing, the agency may not terminate or reduce services until a decision is rendered), 431.231(c)(3) (providing that the agency must reinstate services until a decision is rendered if the agency determines that "the action resulted from other than the application of Federal or State law or policy"), 441.450 (providing that individuals in a self-directed personal assistance services option should be able to exercise certain decision-making authority), and 441.476 (requiring states to implement certain risk management programs for participants).

[6] Plaintiffs have filed numerous motions seeking a preliminary injunction to prevent "irreparable harm." *See* ECF Nos. 16, 20, 47, 51. For a party to be entitled to a preliminary injunction, they must satisfy the standards articulated in *Real Truth About Obama, Inc. v. Federal Election Com'n*, 575 F.3d 342 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), and *Winter v. National Resources Defense Council, Inc.*, 555 U.S. 7 (2008). Notably, a party seeking a preliminary injunction must show that "he [or she] is likely to succeed on the merits . . . ." *Real Truth About Obama, Inc.*, 575 F.3d at 346. As the Court is dismissing this case, for reasons explained below, the Plaintiffs have no likelihood of succeeding on the merits, and their motions are denied.

allegation is without merit." ECF No. 30 at 8. Defendant argues that the Social Security Act and related regulations do not create a federal cause of action; Defendant does not discuss, however, Plaintiffs' § 1983 claim. On March 5, 2018, Plaintiffs opposed Defendant's Motion to Dismiss, ECF No. 33,[7] and on March 15, 2018, they filed a Motion to Strike Defendant's Motion to Dismiss, ECF No. 39.

## II. STANDARD OF REVIEW

As Defendant argues both that the Court does not have subject-matter jurisdiction and that the due process allegation is without merit, the Court addresses the standards of review for both a 12(b)(1) and 12(b)(6) motion to dismiss.

### A. 12(b)(1) Motion to Dismiss

Article III courts are courts of limited jurisdiction, possessing only the authority granted by the Constitution and Congress. *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 194 (4th Cir. 2017). Congress granted the Court "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.[8] Generally, whether any of a plaintiff's claims "arise under" federal law is determined by application of the well-pleaded complaint rule. *Ali v. Giant Food LLC/Stop & Shop Supermarket Co., LLC*, 595 F.Supp.2d 618, 621 (D. Md. 2009) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983)). According to the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "For statutory purposes, a case can 'aris[e] under' federal law in two ways." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). First, and most commonly, "a case arises under federal law when federal law creates the cause of action

---

[7] Plaintiffs amended their opposition at ECF No. 42.
[8] It is undisputed that all parties are Maryland residents; thus, diversity jurisdiction does not apply. *See* 28 U.S.C. § 1332.

6

asserted." *Id.* Second, where a case relies on a state cause of action, the case may still "arise under" federal law where the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 258.

When moving to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of proving that subject-matter jurisdiction properly exists in federal court. *See Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015). In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005). The court should grant the 12(b)(1) motion "'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Quigley v. United States*, 927 F. Supp. 2d 213, 217 (D. Md. 2012) (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

A challenge to subject-matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject-matter jurisdiction, or a factual challenge, asserting " 'that the jurisdictional allegations of the complaint [are] not true.' " *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted) (alteration in original). In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject-matter jurisdiction." *Kerns*, 585 F.3d at 192; *accord Clear Channel Outdoor, Inc.*, 22 F. Supp. 3d at 524. In a factual challenge to subject-matter jurisdiction, "the plaintiff bears the burden of proving" that subject-matter jurisdiction is

7

satisfied, "by a preponderance of the evidence." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir.), *cert. denied*, 558 U.S. 875 (2009).

**B. 12(b)(6) Motion to Dismiss**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations

devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

The Court is mindful that Plaintiffs are *pro se* litigants. A federal court must liberally construe *pro se* pleadings to allow the development of potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Cruz v. Beto*, 405 U.S. 319 (1972). Liberal construction does not mean, however, that this Court can ignore a clear failure in the pleadings to allege facts sufficient to state a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990). A court cannot assume a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c). In considering a Rule 12(b)(6) motion, the court may consider exhibits attached to or referred to in the complaint. *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

### III. DISCUSSION

While there are numerous pending motions for relief that have been filed by Plaintiffs, the Court cannot act on any of these motions if it does not properly have subject-matter jurisdiction over this case or if the Complaints are subject to dismissal. Thus, the Court first addresses Defendant's Motion to Dismiss, ECF No. 30. Concluding that Plaintiffs' Complaints should be dismissed, the Court does not address the remaining motions.

#### A. Subject-Matter Jurisdiction

Defendant argues that the Court does not have subject-matter jurisdiction over this case because there is neither federal question jurisdiction under 28 U.S.C. § 1331 nor diversity jurisdiction under 28 U.S.C. § 1332.[9] While Plaintiffs' suit is regarding a federal spending scheme, Defendant argues that the federal regulations Plaintiffs cite to are "framed as direction or guidance to States that want to administer self-directed personal assistance services through

---

[9] Plaintiffs do not contest that the Court does not have diversity jurisdiction.

their State Plans," and "do not create a private cause of action." ECF No. 30-1 at 7. In its Motion, Defendant does not address Plaintiffs' reliance on 42 U.S.C. § 1983. *Cf.* ECF No. 5 at 11, 16 (alleging a "deprivation of [Plaintiffs'] rights" pursuant to 42 U.S.C. § 1983); ECF No. 7 at 10, 13–14 (same).

The Court concludes that as Plaintiffs' raise a § 1983 claim, their Complaint arises under federal law, and denies that part of Defendant's Motion addressing subject-matter jurisdiction. To the extent that Defendant challenges whether the regulations relied on by Plaintiffs are sufficient to create a federal right, this issue is properly addressed under the 12(b)(6) standard.

### B. Sufficiency of Allegations

The *in forma pauperis* statute authorizes district courts "at any time" to dismiss a case where, as here, the Complaint fails to state a claim on which relief may be granted, or if the claim is frivolous, malicious, or seeks monetary relief against a defendant who is immune from suit. 28 U.S.C. § 1915(e)(2)(B). *See also Jenkins v. Tillbrook*, No. PX-18-565, 2018 WL 1570259, at *1 (D. Md. Mar. 30, 2018). Thus, even absent a motion under Federal Rules of Civil Procedure Rule 12(b)(6), the Court may still dismiss Plaintiffs' Complaints for failure to state a claim. *See Chambers v. Amazon.com Inc.*, 632 Fed. App'x 742, 743 (4th Cir. 2015). Where the Court assesses whether a Complaint should be dismissed under § 1915(e)(2)(B), the standards are "the same as those for reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6)." *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016).

The Court first determines whether the Plaintiffs claims sufficiently raise a federal right, and then assesses whether they have plausibly pleaded a violation of that right.

### i. Existence of a Federal Right

Under 42 U.S.C. § 1983, a plaintiff may "sue in federal court any person who violates their federally protected rights while acting under the color of law" *Hendrick v. Wexford Health Sources, Inc.*, 141 F. Supp. 3d 393, 400 (D. Md. 2015). To state a cause of action under 42 U.S.C. § 1983, a plaintiff must establish that she has been deprived of a right guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (emphasis in original). If there is no violation of a federal right, there is no basis for a claim under § 1983. *Clark v. Link*, 855 F.2d 156, 161 (4th Cir. 1988).

In order to determine whether a particular statutory provision creates a federal right, the Supreme Court of the United States established a three-factor test: (1) "Congress must have intended that the provision in question benefit the plaintiff"; (2) the plaintiff must demonstrate that the right purportedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence; and (3) "the statute must unambiguously impose a binding obligation on the States." *Blessing*, 520 U.S. at 340–41. Even if all three factors are met, the *Blessing* test only creates a rebuttable presumption that the right is enforceable under § 1983. *Id.* at 341. Congress may explicitly foreclose enforcement under § 1983, or it may do so implicitly by creating "a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id.*

In *Gonzaga University v. Doe*, 536 U.S. 273 (2002), the Supreme Court observed that, "if Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms—no less and no more than what is required for Congress to create new rights enforceable under an implied private right of action." *Id.* at 290. As a rule, "where the text and structure of a statute provide no indication that Congress intend[ed] to create new individual rights, there is no basis for a private suit." *Id.* at 286. Furthermore, Congress' intent to benefit the plaintiff requires more than a showing that "the plaintiff falls within the general zone of interest that the statute is intended to protect...." *Id.* at 283. The plaintiff must show that the statute has an "unmistakable focus on the benefited class." *Id.* at 284.

Where Congress enacts legislation pursuant to its Spending Clause authority,[10] the Supreme Court has been "hesitan[t] to associate Spending Clause legislation with individual rights" absent a "clear voice and . . . an unambiguous intent to confer individual rights." *Duncan v. Johnson-Mathers Health Care, Inc.*, No. 09-417-KKC, 2010 WL 3000718, at *10 (E.D. Ky. July 28, 2010). *See also Former Special Project Employees Ass'n v. City of Norfolk*, 909 F.2d 89, 93 (4th Cir. 1990) ("In legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State."). For instance, in *Suter v. Artist M.*, the Court addressed whether private individuals had the right to file suit to enforce a provision of the Adoption Assistance and Child Welfare Act of 1980 directly under the Act or under section 1983. *Suter v. Artist M.*, 503 U.S. 347, 350 (1992). The

---

[10] The Fourth Circuit has described these statutes as having a "familiar theme": "Congress disburses funds to states, and in exchange the states agree to comply with a number of conditions. In this way, Congress can foster compliance with a national objective through persuasion rather than coercion, and states have the option of declining funding and avoiding federal regulation." *W. Virginia Dep't of Health & Human Res. v. Sebelius*, 649 F.3d 217, 223 (4th Cir. 2011).

12

provision in question required States to make "reasonable efforts" to prevent children from being removed to foster homes and to make efforts to reunify the children with their families after removal. *Id.* at 357. A class of parents attempted to enforce this requirement against state officials, claiming that no such efforts had been made. The Court found that the Act did not create privately enforceable rights, as there was no statutory guidance of how "reasonable efforts" were to be measured. *Id.* at 360. The Court reasoned that "[t]he term 'reasonable efforts' in this context is at least as plausibly read to impose only a rather generalized duty on the State, to be enforced not by private individuals." *Id.* at 363

Similarly, in *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1 (1981), the Court held that parts of the Developmentally Disabled Assistance and Bill of Rights Act of 1975, 42 U.S.C. § 6000 *et seq.*, did not grant federal rights to the developmentally disabled. *Id.* at 31. Although the "bill of rights" provision, 42 U.S.C. § 6010, used language that appeared to be rights-creating, (e.g., declaring that the "mentally retarded" had a right to "nondiscriminatory" and "minimally adequate habilitation" in the "least restrictive environment") the Court held that the language did not create mandatory obligations on the state receiving funds under the statute but instead communicated congressional preferences. *Id.* at 7. The Court reasoned that the provision "does no more than express a congressional preference for certain kinds of treatment." *Id.* at 19.

On the other hand, in *Doe v. Kidd*, 501 F.3d 348 (4th Cir. 2007), the Fourth Circuit found that a provision of the Medicaid Act did create an enforceable federal right. The provision in question required that "[a] State plan for medical assistance must . . . provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible

individuals." 42 U.S.C. § 1396a(a)(8). The court reasoned that the provision was "clear" in its requirements, and that the term "reasonable promptness" was defined in federal and state regulations, and that the provision "uses mandatory rather than precatory terms: it states that plans 'must' provide for assistance that 'shall' be delivered with reasonable promptness." *Doe*, 501 F.3d at 356.

In their Complaints, Plaintiffs rely primarily on 42 C.F.R. § 441.450, which provides guidance regarding the self-directed personal assistance services option in Section 1915(j). Plaintiffs argue that by withholding funding for Tall, Defendant has "illegal[ly] violat[ed] . . . Shing's . . . decision-making rights." ECF No. 7 at 10. This regulation provides that "[a] self-directed PAS option is designed to allow individuals . . . to exercise decision-making authority in identifying, accessing, managing and purchasing their PAS. This authority includes, at a minimum, all of the following: . . . Hiring and discharging workers." 42 C.F.R. § 441.450(b). The regulation further provides that "[s]elf-direction means the opportunity for participants or their representatives to exercise choice and control over the budget, planning, and purchase of self-directed PAS, including the amount, duration, scope, provider, and location of service provision." The Court concludes that this regulation created a federal right which may give rise to a § 1983 claim. This provision demonstrates an intent to benefit individuals by giving them control over their personal care, and is not unambiguous or amorphous. *See also Planned Parenthood Arizona Inc. v. Betlach*, 727 F.3d 960 (9th Cir. 2013) (reasoning that Medicaid freedom of choice provision created a right enforceable under § 1983), *certiorari denied* 134 S.Ct. 1283; *Planned Parenthood of Gulf Coast, Incorporated v. Gee*, 837 F.3d 477 (5th Cir. 2016) (holding same), *withdrawn and superseded* 862 F.3d 445, *rehearing and rehearing en banc denied* 876 F.3d 699

14

Similarly, 42 C.F.R. §§ 431.230 and 431.23 confer a privately enforceable right, as they provide that where a beneficiary requests a hearing in certain circumstances "the agency may not terminate or reduce services" and that in some circumstances the agency "must reinstate and continue services." Like in *Doe*, these regulations are clear and are mandatory. They provide specific conditions under which a state agency must continue providing services, and therefore confer a privately enforceable right.

As to 42 C.F.R. 441.476, however, the Court concludes that "the unmistakable focus of [this] . . . regulatory provision[] is on the conduct of the" States, rather than the rights of the beneficiaries. *Kalan v. Health Center Commission of Orange County, Va.*, 198 F. Supp. 3d 636, 643 (W.D. Va. 2016). *See also Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) ("Statutes that focus on the person regulated rather than the individuals protected create "no implication of an intent to confer rights on a particular class of persons"). Plaintiffs argue that Defendant violated 42 C.F.R. § 441.476, which provides that for the self-directed personal assistance services program "[t]he State must specify the risk assessment methods it uses to identify potential risks to the participant," "[t]he State must specify any tools or instruments it uses to mitigate identified risks," "[t]he State must ensure that each service plan includes the risks that an individual is willing and able to assume, and the plan for how identified risks will be mitigated," and "[t]he State must ensure that the risk management plan is the result of discussion and negotiation." This regulation is entirely focused on the conduct that the State must engage in, rather than the rights of the participants. Therefore, this regulation does not create a privately enforceable right. *See also Thrower v. Pennsylvania*, 873 F. Supp. 2d 651, 656 (W.D. Pa. 2012) (determining that section of Medicaid Act and implementing regulations which required state to provide a "written plan of care" did not create enforceable right).

### ii. Plausible Allegations Sufficient to State a Claim

Having concluded that some of the regulations relied upon by Plaintiffs create a federally enforceable right, the Court next determines whether Plaintiffs have plausibly pleaded a claim on which relief may be granted. Here, Plaintiffs' Complaints do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678.

Plaintiffs complain that Defendant violated Shing's right to self-direct her medical care by refusing to follow her direction that she be allowed to continue employing Tall. *See* ECF No. 7-1. The Court takes judicial notice that Maryland's self-directed personal assistance services rules require that employees must not have been convicted of "a felony or crime involving moral turpitude or theft." "Application for a § 1915(c) Home and Community-Based Services Waiver," at 70, https://dda.health.maryland.gov/Pages/Developments/2015/MD0023R0600.pdf (last accessed April 16, 2018). The rules permit participants who are self-directing "to request the Department to waive the criminal background provisions if the applicant demonstrates that: (1) The conviction, probation before judgment, or plea of nolo contendere for a felony or any crime involving moral turpitude or theft was entered more than 10 years before the date of the provider application; and (2) The criminal history does not indicate behavior that is potentially harmful to participants." *Id*. Plaintiffs do not challenge Maryland's authority to implement this rule in their Waiver program. Furthermore, Plaintiffs do not dispute that Tall pleaded guilty to a misdemeanor of "alteration of documents" in September 2009. ECF No. 7 at 6. Specifically, Tall pleaded guilty to one count of Fraud and Related Activity in Connection with Identification Documents under 18 U.S.C. § 1028(a)(2) & (6). *See* ECF No. 30-2. The Fourth Circuit has previously reasoned that crimes under this section are crimes of moral turpitude as they involve

16

fraud. *Babafunmi v. United States*, 210 F.3d 360 (4th Cir. 2000). Therefore, Plaintiffs' various arguments regarding Shing's right to self-direct her care and Tall's right to due process fail to state a claim: under Maryland's rules, Tall was clearly ineligible to continue being employed in the self-directed personal services program, given his conviction. Shing and Tall were given a hearing in front of an ALJ, who ruled against them once it became clear that Plaintiffs were not contesting that Tall had pleaded guilty to a "crime involving moral turpitude" less than ten years previously, rendering him ineligible for the program. ECF No. 30-9.

Finally, regarding Plaintiffs' due process claims, they have failed to plausibly state a claim to which relief may be granted. Plaintiffs' Complaints state only that in violation of their due process rights, Defendant "[has] not given [Plaintiffs] the fair opportunity to express [their] right of continued services pending the Medicaid Fair hearing." ECF No. 1 at 3. This is a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," and "do[es] not suffice" to state a claim to which relief may be granted. *Iqbal*, 556 U.S. at 678.

Thus, for all of Plaintiffs' claims, the Court either lacks subject-matter jurisdiction as no federally enforceable right is invoked, or Plaintiffs have failed to state a claim to which relief may be granted.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 30, is granted-in-part. The Court *sua sponte* dismisses the remainder of Plaintiffs' claims. A separate Order shall issue.

Date: May 2, 2018

GEORGE J. HAZEL
United States District Judge

17